# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

KAREN L. HAVEN,

    Plaintiff,

vs.                                           CV 213-090

THE BOARD OF TRUSTEES OF THREE
RIVERS REGIONAL LIBRARY SYSTEM
and LINDA KEAN,

    Defendants.

## ORDER

In this employment discrimination action, Plaintiff Karen Haven brings a federal Age Discrimination in Employment Act charge, along with a related retaliation charge, against her former employer, Three Rivers Regional Library System. See Dkt. no. 1. She also brings a state-law claim of tortious interference with employment relationships against the Library's Director, Defendant Linda Kean. See id. The Library, as an arm of the State, is protected by Eleventh Amendment sovereign immunity, resulting in **DISMISSAL** of Counts I and II for lack of subject matter jurisdiction. Defendant's Motion for Summary

Judgment is **GRANTED** as to Count III against Defendant Kean, who is immune from suit under the Georgia Tort Claims Act.

## FACTUAL BACKGROUND

Plaintiff, a 53-year-old female, began working for the Three Rivers Regional Library System ("the Library") on August 16, 1999. Dkt. no. 1, ¶¶ 1, 11. The Library is a sub-unit of the University System of Georgia. Id. at ¶ 2. On June 9, 2011, Defendant Kean, the Library Director, informed Plaintiff that she was being laid off due to budget cuts. Id. at ¶¶ 12, 14. Two other librarians, ages 51 and 63, were also laid off that day for the same purported reason. Id. at ¶¶ 15-16. Plaintiff alleges the library retained two younger, less skilled librarians in lieu of the more "senior" librarians. Id. at ¶¶ 17-18. After losing her job, Plaintiff filed a Charge of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on July 18, 2011. Id. at ¶ 12.

Soon after her termination, Plaintiff began searching for a similar librarian position. Id. at ¶ 21. In August of 2011, she applied for a Data Specialist position with the State Library of North Carolina and was called back for an interview. Id. at ¶¶ 22-23. Plaintiff claims she was offered a position by Grant Pair, North Carolina's Program Director. Id. at ¶ 24. However, Pair rescinded this offer. Id. at ¶ 30.

Plaintiff later learned that, between the offer and withdrawal, Pair had contacted Defendant Kean to discuss Plaintiff's employment at the Library. Id. at ¶¶ 25-30. Pair made an Open Records Request for copies of Plaintiff's personnel file, in which Defendant Kean included a copy of Plaintiff's EEOC Charge against the Library and notes she had prepared after Plaintiff's termination. Id. at ¶¶ 25, 27-28. Plaintiff claims that these notes disparaged her performance during her tenure at the library and that the notes and the EEOC Charge should not have been disclosed to prospective employers. Id. at ¶¶ 28-29.

On February 24, 2012, Plaintiff amended her EEOC Charge to add a claim of retaliation. Id. at ¶ 10. She commenced this action against the Library and Defendant Kean on July 10, 2013.

## PROCEDURAL BACKGROUND

In her initial Complaint, Plaintiff brought three claims: Count I alleges the Library violated the Age Discrimination in Employment Act ("ADEA") by terminating Plaintiff while retaining younger, less skilled employees. Id. at ¶¶ 31-33. Count II alleges the Library retaliated against Plaintiff for filing an EEOC Charge by disclosing disparaging information to a potential employer. Id. at ¶¶ 34-38. Count III alleges Defendant Kean tortiously interfered with Plaintiff's employment relationships by sending Plaintiff's employment file to Pair with the specific intent of harming Plaintiff. Id. at ¶¶ 39-46. In her prayer for

3

relief, Plaintiff seeks from the Library damages relating to its violation of the ADEA, back pay, front pay, and attorney's fees. Id. at p. 12. From Defendant Kean, Plaintiff seeks compensatory damages for the emotional pain she endured from losing the opportunity to work for the library in North Carolina, punitive damages for Defendant Kean's deliberate and malicious intent to cause Plaintiff harm, and attorney's fees. Id. at p. 13.

At the close of discovery, Defendants filed the present Motion for Summary Judgment, asserting certain sovereign immunity defenses. See Dkt. no. 23-2. These defenses may have caught Plaintiff off guard, for she sought to amend her Complaint to address its defects. See Dkt. no. 27. The Magistrate Judge denied Plaintiff's request. Dkt. no. 36. Plaintiff did not object to the Magistrate Judge's Order, so this Court considers Defendant's Motion for Summary Judgment in light of Plaintiff's original Complaint.

## DISCUSSION

### I. Standard of Review

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting

4

AO 72A
(Rev. 8/82)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

**II. Plaintiff's Claims against the Library**

Plaintiff brings age discrimination and retaliation claims against the Library under the ADEA. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.

§ 623(a)(1). The ADEA also prohibits employers from retaliating against employees who "opposed any practice made unlawful by this section . . ." § 623(d)(1). An employee aggrieved by its employer's discrimination or retaliation "may bring a civil action in any court of competent jurisdiction" for legal or equitable relief. § 626(c)(1).

Federal courts generally do not have jurisdiction to hear citizen or noncitizen suits against states. The Eleventh Amendment prohibits the "Judicial power of the United States" from reaching "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court interprets this language to also prevent suits against a state brought by its own citizens. Kimel v. Fla. Bd. Of Regents, 528 U.S. 62, 73 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States.") Thus, the Eleventh Amendment enshrouds states with a shield of sovereign immunity against suits in federal court by citizens and noncitizens alike.

The shield of sovereign immunity, though, is not impenetrable. A state may waive its sovereign immunity, or congress can abrogate states' sovereign immunity to enforce the substantive provisions of the Fourteenth Amendment. Stroud v.

McIntosh, 722 F.3d 1294, 1298 (11th Cir. 2013) (citing Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)). Furthermore, the doctrine of Ex parte Young is another fissure in the shield of sovereign immunity, allowing an individual to sue a state despite the Eleventh Amendment where the claimant requests the court to grant "prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985) (citing Ex parte Young, 209 U.S. 123, 155-56 (1908)).

Plaintiff does not contest the fact that the Supreme Court has declared the ADEA unconstitutional as applied to the states because Congress did not abrogate the states' sovereign immunity by enacting the law under section 5 of the Fourteenth Amendment. Kimel, 528 U.S. at 91; see also Stroud, 722 F.3d at 1303. However, Plaintiff does argue that the Ex parte Young doctrine allows her to bring her suit in this case despite any claim to sovereign immunity the Library may have as an arm of the state. Additionally, neither party has briefed the issues surrounding the Library's assertion of sovereign immunity, including the effectiveness of that assertion, the appropriateness of framing it as a defense on the merits, and its impact on this Court's jurisdiction. The Court will first consider the jurisdictional issues of the Library's Eleventh Amendment defense, and then it

will discuss whether the Ex parte Young doctrine allows Plaintiff to overcome that defense.

### a. The Eleventh Amendment and this Court's Jurisdiction

In the Eleventh Circuit, the defense of sovereign immunity is not merely a defense on the merits. An assertion of Eleventh Amendment sovereign immunity "essentially challenges a court's subject matter jurisdiction . . ." Seaborn v. Fla. Dept. of Corrections, 143 F.3d 1405, 1407 (11th Cir. 1998); see also Schopler v. Bliss, 903 F.2d 1373, 1378 (11th Cir. 1990) ("The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state.").

However, the jurisdictional bar of the Eleventh Amendment is the *rara avis* of jurisdictional issues. While most subject matter jurisdiction issues cannot be waived by the parties and should be raised by the court *sua sponte* (see, e.g., Fed. R. Civ P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")), "the Eleventh Amendment does not automatically deprive a court of original jurisdiction." McLendon v. Ga. Dept. of Comm. Health, 261 F.3d 1252, 1257 (11th Cir. 2001); see also Caoldron v. Ashmus, 523 U.S. 740, 745 n.2 (1998) ("While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, . . . we have

AO 72A
(Rev. 8/82)

recognized that it is not coextensive with the limitations on judicial power in Article III."). As such, sovereign immunity is actually a volitional defense that may be waived by the state at its pleasure, and federal courts are not required to consider *sua sponte* whether the Eleventh Amendment strips them of jurisdiction if the state fails to assert that it does. See McLendon, 261 F.3d at 1257. Nevertheless, "a state . . . cannot force a federal court to decide the merits of a claim before addressing the Eleventh Amendment issue, and [the court] can raise an Eleventh Amendment issue on [its] own motion." Id. at 1259.

McLendon contemplated a state's strategic holding of the Eleventh Amendment immunity defense in reserve—Georgia, as defendant, wanted the court to decide the case on the merits, but also wanted to preserve the Eleventh Amendment defense if the court ruled in favor of the plaintiffs. Id. at 1258. The Eleventh Circuit held that a federal court could entertain this kind of "conditional" assertion of Eleventh Amendment immunity at its discretion, and that such discretion could be informed by the balance of judicial economy in deciding the case on the merits as opposed to the Eleventh Amendment issues. Id. at 1259. Thus, while a state may assert or waive the Eleventh Amendment defense at its pleasure, the Court may likewise accept or

decline jurisdiction over a claim where the state has waived its immunity.

The Eleventh Amendment issue presently before the Court is slightly different than that in McLendon. Here, the Library asserts its Eleventh Amendment immunity as a defense on the merits rather than a jurisdictional defense. The problem with the Library's argument is that Eleventh Amendment immunity, by its nature, attacks the Court's jurisdiction to reach the merits. Seaborn, 143 F.3d at 1407. The Court may find that the Library's Eleventh Amendment immunity strips it of jurisdiction to hear the case, or it may reach the merits of the Library's motion for summary judgment, but it cannot do both. The Library's mischaracterization of the sovereign immunity defense, then, could potentially lead to the question of whether it properly raised that defense.

Generally, the Eleventh Amendment is not a defense to be raised, but one to be waived. "The test to determine if a state has waived its sovereign immunity is a stringent one." Barnes v. Zaccari, 669 F.3d 1295, 1308 (11th Cir. 2012) (quoting Coll. Sav. Bank, 527 U.S. at 675). A federal court "will find a waiver either if the State voluntarily invokes [the court's] jurisdiction, or else if the State makes a 'clear declaration' that it intends to submit itself to [the court's] jurisdiction." Coll. Sav. Bank, 527 U.S. at 675-76. Here, the Library made no

AO 72A
(Rev. 8/82)

affirmative invocation of the Court's jurisdiction. It simply failed to invoke its Eleventh Amendment immunity until late in litigation, and (arguably) invoked that immunity in an improper manner. Nevertheless, an effective waiver requires some affirmative assent on the part of the State, and this Court will not interpret the Library's questionable assertion of immunity as a waiver by default.

However, even if the Eleventh Circuit's and Supreme Court's Eleventh Amendment precedents allowed for waiver by default, this Court would not be bound by such a waiver. As stated in McLendon, courts in the Eleventh Circuit always retain the right to consider Eleventh Amendment immunity *sua sponte*. McLendon, 261 F.3d at 1259. Thus, the Court finds that the Library is entitled to Eleventh Amendment sovereign immunity (whether it properly raised that defense or not), and proceeds by examining whether the Ex parte Young doctrine provides an exception to that immunity.

### b. The Ex parte Young exception to Sovereign Immunity

The doctrine of Ex parte Young allows an individual to sue a state despite the Eleventh Amendment where the claimant requests the court to grant "prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985) (citing Ex parte Young, 209 U.S. 123, 155-56 (1908)). "In determining whether the doctrine of Ex

parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Couer d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)); see also Summit Med. Ass'n v. Pryoer 180 F.3d 1326, 1336 (11th Cir. 1999) (noting that the doctrine of Ex parte Young only applies to "ongoing and continuous violations of federal law.").

Here, the Library is uncontestedly an arm of the state. Nevertheless, Plaintiff argues that the Ex parte Young doctrine allows her to bring her suit against the Library because she is seeking prospective relief from an ongoing violation of federal law. See Dkt. no. 30, pp. 4-7. However, Plaintiff's argument in support of this proposition is entirely based on her Proposed Amended Complaint (Dkt. no. 27-1) in which Plaintiff attempts to remedy the jurisdictional defects of her original complaint. As mentioned above, the Magistrate Judge denied Plaintiff's motion to amend her complaint, see Dkt. no. 36, and Plaintiff did not object to that ruling. Thus, the Court must examine Plaintiff's original complaint (Dkt. no. 1) to see if it avails itself of the Ex parte Young doctrine.

AO 72A
(Rev. 8/82)

It does not. Plaintiff's complaint frames the Library's alleged discriminatory termination and retaliation as discreet conduct that occurred once in the past, and not as "ongoing and continuous violations of federal law." See Dkt. no. 1, ¶¶ 31-38; Summit Med. Ass'n, 180 F.3d at 1336. Additionally, Plaintiff's requested relief is largely retrospective and is thus not the type of relief Ex parte Young exempts from states' sovereign immunity.[1] Ex parte Young, then, will not save Plaintiff's complaint from the Library's defense of sovereign immunity, and the Court will **DISMISS** Counts I and II for lack of subject matter jurisdiction.

### III. Plaintiff's Claims against Defendant Kean

In addition to her two claims against the Library, Plaintiff brings a tortious interference with employment relationships charge against Defendant Kean personally for sending disparaging notes and a copy of Plaintiff's EEOC Charge to a prospective employer. Dkt. no. 1, ¶¶ 8, 39-46. Plaintiff does not argue that this act was done outside the scope of

---

[1] While most of Plaintiff's requested forms of relief against the Library are retrospective, she also seeks front pay, which could arguably be characterized as prospective. Defendants cite authority outside of the Eleventh Circuit to support their argument that front pay does not meet the Ex Parte Young exception because it is designed to compensate the plaintiff for a past violation of federal law as opposed to a continuing violation. See Dkt. no. 23-2, p. 3 n.2 (citing Pechon v. La. Dep't of Health & Hosps., No. 08-0664, 2009 WL 2046766, at *10 (E.D. La. July 14, 2009)). Because Plaintiff's failure to allege an ongoing violation of federal law in her complaint is alone sufficient to deny application of the Ex parte Young doctrine, this Court need not decide whether Plaintiff's request for front pay is prospective or retrospective.

13

Defendant Kean's duties as an employee of the Library, but she does allege that the interference was intentional and malicious.

When a state official is sued in her official capacity, she is immune from suit under the state's Eleventh Amendment sovereign immunity. Jackson v. Ga. Dept. of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994) (citing Kentucky v. Graham, 473 U.S. 159, 169 (1985)). "In contrast, the Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts." Id. Here, Plaintiff has sued Defendant Kean "personally for the tort of wrongful interference with employment relationships under the law of the State of Georgia." Dkt. no. 1, ¶ 8. Because Plaintiff has sued Defendant Kean individually rather than in her official capacity, the doctrine of sovereign immunity does not strip this Court of its subject matter jurisdiction over Count III of Plaintiff's Complaint, and the Court proceeds by considering the merits of Plaintiff's claim.[2]

---

[2] Georgia Code section 50-21-25 makes the GTCA the "exclusive remedy for any tort committed by a state officer or employee." § 50-21-25(a). The GTCA requires courts to substitute the employee's state agency as the named defendant in a case brought against an employee "for an act or omission for which the state is liable under this article." § 50-21-25(b). Here, the Court cannot substitute the Library in place of Defendant Kean for Count III because "interference with contractual rights" is not included in the State's waiver of sovereign immunity and thus is not an act or omission for which the State would be liable. § 50-21-24(7). But even if Plaintiff's claim against Defendant Kean could have been brought against the State under the GTCA, the Court would dismiss the claim because (1) Plaintiff failed to give ante litem notice pursuant to Georgia Code section 50-21-26, and (2) Georgia has not waived its sovereign immunity for actions filed in federal court, see Ga. Code Ann. § 50-21-26(b).

A state-law claim against the state of Georgia or its employees is governed by the Georgia Tort Claims Act ("GTCA"). See Ga. Code Ann. §§ 50-21-22(5), 50-21-23(a). Under the GTCA, a state officer or employee "who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." § 50-21-25(a).

Plaintiff does not contest that Defendant Kean acted within the scope of her official duties. However, Plaintiff argues that the Georgia Constitution allows for suits against public officers individually "if they act with actual malice or with actual intent to cause injury in the performance of their official functions." See Dkt. no. 30, p. 16 (citing Ga. Const. art. I, § II, ¶ IX(d)).

The relevant portion of the Georgia Constitution on which Plaintiff relies reads:

> *Except as specifically provided by the General Assembly in a State Tort Claims Act*, all officers and employees of the state or its departments and agencies may be subject to suit . . . and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

Ga. Const. art. I, § II, ¶ IX(d) (emphasis added). The Georgia Supreme Court has already considered and unanimously refuted the

same constitutional argument that Plaintiff makes before this Court: "Reliance on that constitutional provision [is] misplaced [when] essential qualifying language in the provision, to wit, 'Except as specifically provided by the General Assembly in a State Tort Claims Act,' [is] omitted from consideration . . ." Ridley v. Johns, 552 S.E.2d 853, 854 (Ga. 2000). The Georgia General Assembly has "specifically provided" in the GTCA that a state employee is not personally liable for torts committed while acting within the scope of her official duties. See Ga. Code Ann. § 50-21-25. "Since there is no exemption in the statute for acts motivated by malice or intent to injure, the presence of such motivation has no effect on the immunity granted by this statute." Ridley, 552 S.E.2d at 854.

Thus, even assuming Defendant Kean acted maliciously in forwarding Plaintiff's employment file to a prospective employer, such malicious intent cannot overcome Defendant Kean's official immunity under the GTCA. Therefore, Defendant Kean's motion for summary judgment as to Count III is **GRANTED**.

**CONCLUSION**

Defendants in this case are protected from liability either by the Eleventh Amendment or the GTCA, and Plaintiff has not presented any disputed issues of material fact that can overcome these defenses. As such, Defendants' Motion for Summary Judgment (Dkt. no. 23-2) is **GRANTED** as to Count III against Defendant

16

Kean, while Counts I and II are **DISMISSED** for lack of subject matter jurisdiction. The Clerk of Court is instructed to close the case.

**SO ORDERED**, this 12TH day of November, 2014.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)