# In the United States District Court for the Southern District of Georgia Brunswick Division

KAREN L. HAVEN,

      Plaintiff,

    v.

THE BOARD OF TRUSTEES OF THREE
RIVERS REGIONAL LIBRARY SYSTEM
AND LINDA KEAN,

      Defendants.

NO. 2:13-CV-00090

## ORDER

Before the Court is Defendant The Board of Trustees of Three Rivers Regional Library System's Motion for Summary Judgment. This Motion has been fully briefed and is ripe for review. For the following reasons, Defendant's Motion with respect to Plaintiff's age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (2018) ("ADEA"), is **GRANTED**. Defendant's Motion with respect to Plaintiff's retaliation claim under the ADEA is **DENIED**.

## BACKGROUND

### I.   Factual Background

Plaintiff Karen Haven began working as a certified librarian for the Three Rivers Regional Library System ("Three Rivers") in

1999. Defendant's Statement of Undisputed Facts, Dkt. No. 23-1 ¶¶ 12, 18.[1] Three Rivers is the regional library system over Brantley, Camden, Charlton, Long, McIntosh, and Wayne counties. Id. ¶ 1. Linda Kean, has been the Director of Three Rivers since taking over on January 1, 2010. Id. ¶¶ 1, 13.

In 2011, the State of Georgia informed Three Rivers that it would be providing approximately $200,000 less in funding for the regional library system for the fiscal year 2012. Id. ¶ 15. As a result, Kean had to reduce spending to meet the new budget. To absorb a budget cut that large, Kean had to cut personnel, and because librarian salaries were the bulk of Three River's personnel budget, Kean decided to cut three librarian positions. Id. ¶¶ 16-17, 20. At the time, Three Rivers employed four certified librarians who performed library functions: Plaintiff (age 51), Jamie Wendt (age 50), Ceil Smith (age 41), and Mareen Hersey (age 63).[2] Id. ¶ 18. Kean decided to lay-off Wednt because he was responsible for the talking book center, which was closing. Id. ¶ 21. Kean testified that she thought the next logical choice was Hersey because she often had trouble finding work for Hersey to do since she was responsible for special projects and assisting Haven

---

[1] Throughout this Order, the Court cites only those statements in Defendant's Statement of Undisputed Material Facts that Plaintiff explicitly admits.

[2] Kean was born in 1957, so in 2011 she was age 54 or 55. Dkt. No. 23-1 ¶ 1.

AO 72A
(Rev. 8/82)

with cataloguing. Dkt. No. 32-2 at 33. Hersey also did not have experience in information technology ("IT"). Dkt. No. 23-1 ¶ 23.

This narrowed down the final lay-off decision to Smith and Plaintiff. Both Plaintiff and Smith were performing essential functions for Three Rivers. Id. ¶ 25. Plaintiff was responsible for cataloging, and Smith was responsible for IT, which meant that the remaining employee would need to cover both areas.[3] Id. Kean testified that she chose to retain Smith because Smith had prior cataloging experience while Plaintiff did not have the necessary IT experience, and she also considered the fact that Plaintiff had documented reprimands in her personnel file while Smith's file had no such reprimands. Dkt. No. 32-2 at 39-41; Dkt. No. 32-1 at 70.

As far as Plaintiff's IT experience, it is true that Plaintiff had a master's degree in Library and Information Studies and had performed IT work when she first started with the library about ten years earlier. Plaintiff's Statement of Additional Undisputed Material Facts, Dkt. No. 30-2 ¶ 1;[4] Dkt No. 34-1 at 38-39. However, Plaintiff did not perform IT functions for very long. Shortly after Plaintiff was hired, Lee Moon took over the IT work at that time because Plaintiff did not have a background in IT networking

---

[3] Kean did hire Amanda Barker to take over as the IT librarian about a year after the reduction-in-force when funding stabilized. Dkt. No. 32-1 at 31, 69. In addition, Three Rivers used an outside contractor for extraordinary IT issues. Id. at 69.

[4] Throughout this Order, the Court cites only those statements in Plaintiff's Statement of Additional Undisputed Material Facts that Defendant explicitly admits.

AO 72A
(Rev. 8/82)

issues.[5] Dkt. No. 34-1 at 38-39. Now, ten years later, Smith was in charge of IT functions at the library at the time of Kean's reduction-in-force ("RIF") decision. Dkt. No. 23-1 ¶ 25; Dkt. No. 32-1 at 70.

As for the documented performance issues in Plaintiff's personnel file, the file contained the following entries in 2011:

> A February 2006 letter from a prior director counseling Plaintiff about an "unprofessional, antagonistic, and unconstructive" e-mail that Plaintiff had sent.

> An October 22, 2009, verbal notice from a prior director to Plaintiff regarding speaking to the press about library matters.

> An October 22, 2009, verbal notice from a prior director to Plaintiff for violating library policy by contacting a library trustee.

> A May 2011 conversation between Kean and Plaintiff regarding Kean's concerns about Plaintiff's performance, specifically Plaintiff being behind in cataloguing.

> A May 2011 conversation between Kean and Plaintiff regarding Kean finding boxes of books that Plaintiff had failed to catalogue and distribute to the libraries in the Three Rivers system.

> A June 6, 2011 counseling notice issued by Kean to Plaintiff for violating library policy by sending an email soliciting money without approval from Kean.

Dkt. No. 23-1 ¶¶ 48-51, 55, 58. Kean did not find any reprimands in Smith's file and considered her to have an excellent performance record. Dkt. No 32-1 at 70; Dkt. No. 32-2 at 35. Based on these

---

[5] Plaintiff also testified that she did not apply for a IT position that became available after her employment with Three Rivers ended because "IT was not [her] strength." Dkt. No. 34-1 at 61.

AO 72A
(Rev. 8/82)

reasons, Kean informed Plaintiff on June 10, 2011, that she was being laid-off because of budget cuts. Dkt. No. 23-1 ¶ 28.

About a month later, on or about July 18, 2011, the United States Equal Employment Opportunity Commission (EEOC) sent a notice to Three Rivers that Plaintiff had filed a charge of age discrimination against the library. Id. ¶ 29. About two weeks later on August 2, 2011, counsel for Three Rivers sent a letter to Plaintiff advising that it would be in Plaintiff's best interest to drop her discrimination claim. Dkt. No. 30-2 ¶ 16. The following day, August 3rd, Kean added six pages of new handwritten notes about Plaintiff into Plaintiff's personnel file. Dkt. No. 30-2 ¶ 17. The August 3rd notes included comments about Plaintiff giving incorrect accounts of processing supplies such as tape, Plaintiff allowing staff to take materials home resulting in missing materials, Plaintiff not being able to remain current in her cataloging workload, Plaintiff having difficulty working with venders, Plaintiff attempting to attend a cataloging summit without prior approval from Kean, Plaintiff refusing to train a new employee to do copy cataloging because she did not think the new employee was capable, and Plaintiff employing her niece while allowing the niece to eat and take coffee breaks during work hours. Dkt. No. 34-4 at 10-15.

During the month of August, Plaintiff applied for a position with the State Library of North Carolina. Dkt. No. 30-2 ¶ 18. In

AO 72A
(Rev. 8/82)

the application, Plaintiff gave Grant Pair, the hiring director at the North Carolina library, permission to contact Kean as an employment reference. Dkt. No. 30-2 ¶ 22; Dkt. No. 23-1 ¶ 31. Pair called Kean to ask if she would answer some questions about Plaintiff who they were considering for a position, but Kean declined. Dkt. No. 30-2 ¶ 25. Rather than state a reason for declining, Kean suggested that Pair could make a request for Plaintiff's personnel file.[6] Id. ¶¶ 26-27; Dkt. No. 23-1 ¶ 36. Pair had no reason to request the file but for Kean's suggestion. Dkt. No. 30-2 ¶ 27. On October 19, 2012, as Kean instructed, Pair sent an email requesting a copy of Plaintiff's personnel file. Id. ¶ 28. That same day, Kean added two more pages of handwritten notes which included derogatory comments and complaints about Plaintiff. Id. ¶ 29. The comments included that Plaintiff was not following "TRRLS cataloging procedure," was allowing libraries to order materials through a different "sign in" to avoid a $4.00 charge, and as a result "thousands of books . . . were waiting to be cataloged and sent to member libraries." Dkt. No. 34-4 at 16-17. Kean exclaimed in the notes that "[n]o wonder our cataloging department was _never_ current while Karen Haven was in charge of the department." Id. (emphasis in original). The following day,

---

[6] Kean stated in her deposition that Pair was the one who brought up the personnel file first, but the parties agree that Kean suggested to Pair that he could request the file. Dkt. No. 32-1 at 91-92; Dkt. No. 30-2 ¶¶ 26-27; Dkt. No. 35-1 ¶¶ 26-27.

AO 72A
(Rev. 8/82)

Kean replied to Pair's email letting him know that she had received his open records request and was working on it. Dkt. No. 30-2 ¶ 30. After receiving and reviewing Plaintiff's personnel file, Pair decided not to recommend Plaintiff for the Data Specialist position for which she had applied. Id. ¶ 31. Pair testified that although "there was no one document" that caused him to not recommend Plaintiff, he also stated he was concerned about the notes he saw in her personnel file, specifically the "[e]-mails [and] notes." Dkt. No 30-2 ¶ 33; Dkt. No. 34-3 at 14. Pair testified that he did not recommend Plaintiff after reviewing her file because he questioned her professional judgment in not informing him about the negative relationship with her former employer. Dkt. 34-3 at 15-17.

## II. Procedural History

After not receiving the job in North Carolina, Plaintiff amended her EEOC charge to include a claim of retaliation on or about February 24, 2012. Dkt. No. 1 ¶ 10. She commenced this action against Three Rivers and Kean on July 10, 2013. Plaintiff sued Three Rivers for age discrimination and retaliation under the ADEA. She sued Kean for tortious interference with employment relationships.

This Court issued an initial order granting Defendant Kean's motion for summary judgment as to the tortious interference with employment relationships claim and dismissed Plaintiff's two

AO 72A
(Rev. 8/82)

claims against Three Rivers under the ADEA for lack of subject matter jurisdiction finding that Three Rivers had sovereign immunity from suit. Dkt. No. 37. Plaintiff appealed, and the Eleventh Circuit vacated and remanded this Court's initial order holding that a district court cannot rely on a plaintiff's failure to oppose a defendant's contention that it was an "arm of the state" for Eleventh Amendment immunity purposes. Dkt. No. 52. The Eleventh Circuit remanded the case for this Court to decide the Eleventh Amendment "arm of the state" issue, and this Court found that Three Rivers was not an arm of the state for Eleventh Amendment purposes. Dkt. No. 65. Thus, Three Rivers was not immune from suit.

Plaintiff did not appeal the Court's grant of summary judgment with respect to the claim against Kean for tortious interference. Therefore, that judgment remains final, and only Plaintiff's two claims against Three Rivers under the ADEA remain to be adjudicated on the merits.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson*, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting *Celotex Corp.*, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict

9

motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

Plaintiff brings two separate claims against Defendant for age discrimination and retaliation under the ADEA. "The ADEA makes it 'unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)). The ADEA applies to "individuals who are at least 40 years of age." 29 U.S.C. § 631 (a). The ADEA also prohibits employers from retaliating against employees who "opposed any practice made unlawful by this section . . . ." § 623(d)(1). An employee aggrieved by its employer's discrimination or retaliation "may bring a civil action in any court of competent jurisdiction" for legal or equitable relief. § 623(c)(1).

AO 72A
(Rev. 8/82)

## I.  ADEA Discrimination Claim

To prove a claim of age discrimination under the ADEA, Plaintiff must establish that her age was the "but-for" cause of the adverse employment action, and she can do this through direct or circumstantial evidence of discrimination. Liebman v. Metropolitan Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015). In the absence of direct evidence of discrimination, courts utilize the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Chapman, 229 F.3d at 1024. Under this framework, a plaintiff must first establish a prima facie case of discrimination.

To make out a prima facie case under the ADEA, a plaintiff must show the he "(1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job . . . and (4) was replaced by a younger individual." Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997) (citations omitted). But, this prima facie rule is altered in cases involving a reduction-in-force because in an "RIF" situation, "employers rarely seek replacements for the discharged employee." Mitchell v. City of LaFayette, 504 F. App'x 867, 870 (11th Cir. 2013); see Benson, 113 F.3d at 1208. In such cases, the plaintiff must demonstrate the following: "(1) he was in a protected age group; (2) he was adversely affected by an employment decision; (3) he was qualified for his current position or to assume another

AO 72A
(Rev. 8/82)

position at the time of discharge; and (4) the evidence could lead a factfinder reasonably to conclude that the employer intended to discriminate on the basis of age." Mitchell, 504 F. App'x at 870; see Benson, 113 F.3d at 1208. "In order to satisfy the last prong, the plaintiff must produce some evidence that the employer did not treat him neutrally with respect to his age, but, instead, discriminated based upon it." Mitchell, 504 F. App'x at 870.

If the plaintiff can establish a prima facie case, the burden of production shifts to the defendant to show a non-discriminatory reason for the adverse employment action. Chapman, 229 F.3d at 1035. If the defendant can provide such a reason, the burden shifts back to Plaintiff to prove that the reason given by the defendant was mere pretext for discrimination. Id. Provided that the proffered reason is "one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id. at 1030 (11th Cir. 2000). In other words, the Court does not sit as a "super-personnel department that reexamines an entity's business decisions." Id. (citations omitted). Rather, the Court is "solely concerned with 'whether unlawful discriminatory animus motivate[d] a challenged employment decision.'" Mitchell, 504 F. App'x at 871 (11th Cir. 2013) (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir.1999).

12

In this case, Plaintiff relies on circumstantial evidence, which makes the McDonnell Douglas burden-shifting framework appropriate. Furthermore, this case involved the laying-off of three librarians as part of an RIF due to a decreased budget. While it is true that Smith took over Plaintiff's cataloging responsibilities, Smith was the only librarian left at Three Rivers and was responsible for all of the IT issues—something that Plaintiff was not responsible for. In other words, this was an RIF situation where Smith began a new position with combined responsibilities of cataloguing and IT functions, not a situation where Plaintiff was fired and replaced. Thus, the altered prima facie standard is applicable.

Here, the Court finds that the first three elements of the prima facie case are met. Where Plaintiff fails to make out his prima facie case is element number four. First, Plaintiff failed to even address the prima facie case in her response to Defendant's motion for summary judgment, deciding to jump directly into a pretext argument instead. See Davis v. Mgmt. Tech., No. 1:03-CV-118 (WLS), 2005 WL 2406059, at *4 (M.D. Ga. Sept. 28, 2005) (granting summary judgment in favor of the defendant where the plaintiff failed to address the prima facie case argument and instead skipped straight to pretext prong of the analysis), aff'd, 193 F. App'x 872 (11th Cir. 2006). Second, even if Plaintiff had addressed the prima facie case issue, the record fails to show

facts that would allow a reasonable jury to conclude that Defendant intended to discriminate on the basis of age in laying off Plaintiff. The record is devoid of any evidence of any negative or discriminatory comments about age made by Kean or others at Three Rivers.[7] See Dkt. No. 23-1 ¶ 73 ("Plaintiff is not aware of any ageist comments made by Kean."). The only evidence that Plaintiff could point to on this issue is the fact that she, at the age of 51, was laid-off while Smith, at the age of 41, was retained as the only remaining librarian. But, in the context of an RIF, this fact alone would not be enough to allow a reasonable jury to find that Defendant intended to discriminate on the basis of age in reaching the decision of who to retain and who to lay-off.

Even if Plaintiff could meet the prima facie case element, Defendant presents a legitimate non-discriminatory reason for laying off Plaintiff while retaining Smith. Kean testified that she decided to lay-off Plaintiff instead of Smith because of Smith's better IT experience and clean personnel file. Kean explained that she had to layoff librarians to get within the

---

[7] Plaintiff states in her Statement of Undisputed Facts that "Kean wanted to get rid of what 'she referred to [as] the older librarians,' and 'bring young people in.'" Dkt. 30-2 ¶ 8. However, as correctly pointed out by Defendant, Plaintiff's deposition contradicts this statement because it makes clear that this comment was allegedly made by Leslie Jones who was a previous director of Three Rivers, and it is therefore irrelevant because Leslie Jones was no longer the director of Three Rivers when Plaintiff was let go. Additionally, even if the statement was relevant, it is double-hearsay because Plaintiff claims that she heard other people say they heard Jones make this comment. Thus, this alleged statement has no bearing on the prima facie case.

AO 72A
(Rev. 8/82)

$200,000 budget cut. She had already decided to lay-off two of the other four librarians, Wendt and Hershey, which narrowed the decision to Smith and Plaintiff. In deciding who to retain, Kean stated that she needed a librarian who could handle both the cataloging and IT responsibilities of the office. While both had cataloging experience, Plaintiff had not handled the IT functions in approximately ten years and had only dealt with IT functions for a short time when she was initially hired. Plaintiff admitted that she did not have experience in IT network issues and stated that IT was not her strength. In addition to deciding that Smith could better handle both of these functions as the single librarian, Kean also noted that while Plaintiff's personnel file contained various documentations of performance problems, Smith's file did not contain any such documentations. Thus, based on these nondiscriminatory reasons, Kean decided to lay-off Plaintiff.

Because Defendant articulated a legitimate non-discriminatory basis for its decision to lay-off Plaintiff, Plaintiff would have to show that this articulated basis was pretext for age discrimination. Even assuming arguendo that Plaintiff established a prima facie case, Plaintiff has not met her burden on pretext. At the outset, Plaintiff faces a tough burden to show pretext because Kean, who laid-off Plaintiff, was older than Plaintiff. See Vahey v. Philips Elecs. N. Am. Corp., 461 F. App'x 873, 875 (11th Cir. 2012) ("[A] plaintiff alleging age discrimination by

AO 72A
(Rev. 8/82)

decisionmakers over age 40 faces a 'difficult burden' because such decisionmakers 'are more likely to be the victims of age discrimination than its perpetrators.'") (quoting Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991)). First, Plaintiff argues that there is a genuine dispute of material fact as to why Plaintiff was discharged claiming that Plaintiff was told she was let go as a part of an RIF due to budget cuts without any mention of her job performance. However, the record is clear that Kean had to lay-off employees due to budget cuts and in deciding who to lay-off, she looked to different factors including performance issues. Plaintiff was not fired for job performance issues; she was let go due to budget cuts that required Kean to consider performance and other job-related issues in deciding who to retain.

Second, Plaintiff challenges Defendant's proffered reason that she had no recent IT experience arguing that Plaintiff was the "IT person" when she was hired and that she has a master's degree in Library and Information Services. She also mentions the fact that Three Rivers hired an IT person after laying off Kean and contracted with an out-of-network person for IT issues. But, Plaintiff fails to mention the facts that Lee Moon took over IT functions shortly after Plaintiff was hired and that Plaintiff had not been the "IT person" in about ten years. At the time Plaintiff was let go, Smith, not Plaintiff, was already in charge of IT

16

functions. Plaintiff also admits in her deposition that she did not have experience with IT network issues, and in regard to the IT person hired almost a year after Plaintiff was laid-off, Plaintiff did not apply for that position because IT was not her strength. As for the outside IT contractor, Kean explained in her deposition that the contractor has always been used for issues that required more in-depth IT experience than the IT librarian could handle.

Finally, Plaintiff argues that her file did not contain any documented performance issues before June 10, and that any issues in the file before that date related to issues she raised while advocating on the behalf of others. Plaintiff's argument on this point is squarely contradicted by the documentations of performance issues and policy violations in her file. See supra at 4. In addition, Plaintiff does not dispute the fact that Smith did not have any documented performance issues in her file.

Here, Plaintiff fails to show that a reasonable factfinder could find that Defendant's asserted reason for laying her off was pretext for discrimination. Her arguments fail to show actual discrimination or undermine the non-discriminatory reasons given by Defendant; rather, Plaintiff's arguments ask the Court to question the wisdom or business judgment of Defendant's decision. For these reasons, Defendants Motion for Summary Judgment with

respect to Plaintiff's claim of age discrimination under the ADEA is **GRANTED.**

## II.  ADEA Retaliation Claim

Retaliation claims under the ADEA are also analyzed under the McDonnell Douglas burden-shifting framework.  See Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1193-94 (11th Cir. 2016) (applying the burden-shifting framework to analyze a plaintiff's retaliation claim under Title VII and the ADEA).  To establish a prima facie case of retaliation, the plaintiff must show a "(1) statutorily protected expression, (2) [an] adverse employment action, and (3) a causal link between the protected expression and the adverse action."  Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (applying burden-shifting framework in Title VII case); see Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001) ("[W]e typically apply legal standards developed in Title VII and ADEA cases interchangeably."); Coles v. Post Master Gen. United States Postal Servs., 711 F. App'x 890, 896 (11th Cir. 2017) (quoting Gomez-Perez v. Potter, 553 U.S. 474, 479, 487 (2008)) ("'The ADEA federal-sector provision was patterned directly after Title VII's federal-sector discrimination ban' and bars retaliation against federal employees 'based on the filing of an age discrimination complaint.'"); see also Trask, 822 F.3d at 1193-94.  To establish a "causal link" a plaintiff "need only establish that the protected activity and the adverse action

were not wholly unrelated" and "[a]t minimum . . . must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." Goldsmith, 996 F.2d at 1163.

In this case, Plaintiff asserted a statutorily protected expression by filing a charge with the EEOC and notifying her former employer of the action. Plaintiff has also likely experienced an adverse employment action in the negative notes that were added to her personnel file after she was laid-off, but at the very least, it is a jury issue. Defendant argues that the first note added on August 3rd cannot be considered an adverse employment action because it would be unreasonable to assume that such a note could have an impact months later when Pair requested the personnel file from Kean. However, while it might be difficult for Plaintiff to show that Defendant wrote the note with the intent of harming Plaintiff's future employment opportunities, in light of the evidence that Kean is the one who suggested sending the file to Pair, the note added about two weeks after Defendant was notified about the EEOC charge and the day after Defendant's counsel encouraged Plaintiff to drop the EEOC claim could lead a reasonable juror to infer that this note was an adverse employment action intended to retaliate against Plaintiff. Furthermore, the fact that Plaintiff was no longer employed by Defendant does not mean that the notes cannot be considered adverse employment actions

AO 72A
(Rev. 8/82)

because even former employers can take adverse actions against their former employees. See Robinson v. Shell Oil Co., 519 U.S. 337, 339 (1997) (finding former employees included within Title VII's retaliation provision where a former employer gave a negative job reference for one of its former employees); Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1532 (11th Cir. 1990) (holding that former employees can sue for retaliation), superseded by statute on other grounds, Civil Rights Act of 1991, 105 Stat. 1071.

As for the third element of a causal link, Plaintiff has pointed to evidence of temporal proximity of the notes added to her file and of the fact that Kean suggested that Pair request Plaintiff's personnel file. Here, Plaintiff has to show only that Kean adding notes to her file after Plaintiff was laid-off was not wholly unrelated to Plaintiff's EEOC charge. Here, Kean added the August 3rd note to Plaintiff's file about two weeks after Plaintiff filed the EEOC charge and the day after Defendant's counsel encouraged Plaintiff to drop the EEOC charge.

Defendant argues that any causal inference from the close proximity the notice of the EEOC charge and the August 3rd note is severed by the intervening event that Kean was made aware of problems with Plaintiff's performance that Kean did not know about while Plaintiff was employed. To support this point, Defendant cites Wu v. Southeast-Atlantic Beverage Corp., 321 F. Supp. 2d 1317, 1337 (N.D. Ga. 2004). There, during the roughly five months

after the employee filed an EEOC complaint, the employer received complaints about the employee, suspended the employee because of the complaints, learned of more problems about the employee during the suspension, and as a result, terminated the employee. The district court found that these intervening events dispelled any inference of a causal link created by temporal proximity. Defendant also cites Spence v. Panasonic Copier Co., 46 F. Supp. 2d 1340 (N.D. Ga. 1999). There, after allegedly complaining about discrimination in either June or August (a protected activity), the employee failed to meet sales quotas and was warned about the quotas in September and October before being terminated at the end of October. The district court found that these intervening factors barred an inference of causation.

In this case, Plaintiff's alleged intervening factor is Kean's finding out about new information regarding Plaintiff's work performance that Kean wanted to add to the personnel file for her own benefit. This assertion is not enough to sever the causal inference based on temporal proximity. Writing a new six-page-long note of negative comments in the file after an employee has already been let go, about two weeks after learning that the employee has filed a suit with the EEOC, and a day after your attorney encouraged the employee to drop the suit could allow a reasonable juror to find causation and thus retaliation. Furthermore, the cases cited by Defendant involved intervening

AO 72A
(Rev. 8/82)

actions by the employee that justified the adverse action; here, the alleged intervening act involved Kean learning of new information, not any new conduct by Plaintiff to warrant some adverse action. Lastly, just because Kean had documented other issues about Plaintiff before Plaintiff was let go does not, as Defendant argues, undermine the possible inference of causation from the temporal proximity of six pages of new notes added after Plaintiff was let go. In other words, a reasonable juror could still find an inference of causation based on the approximately two-week temporal nature of the August 3rd note even if Plaintiff had notes in her personnel file before she was fired.

Kean also added a note to Plaintiff's file on October 19th, the same day that Pair contacted Kean to request Plaintiff's personnel file. Defendant argues that this note cannot as a matter of law show a causal connection because it was written three months after Plaintiff filed her EEOC charge in July. While it is true that the Eleventh Circuit has stated that "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" to show causation, Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007), we are not left with mere temporal proximity as the only evidence of retaliation in this case. While the timing of the October 19th note alone might not give rise to an inference of causation, read in light of the facts that it was the second set of negative and

AO 72A
(Rev. 8/82)

disparaging comments added to Plaintiff's file after her being let go and after filing her EEOC charge, that Kean is the one who suggested the personnel file to Pair, and that the October 19th note was added to the file the same day that Pair emailed Kean requesting Plaintiff's personnel file, the Court cannot say as a matter of law that a reasonable jury could not infer a causal link based on the combination of these facts. Indeed, a reasonable juror could find that in light of all of these facts, a note added right before sending the file to a new potential employer emphasizing that "[n]o wonder our cataloging department was never current while Karen Haven was in charge of the department," was not wholly unrelated to the previously filed EEOC charge, thus establishing a causal link and a prima facie case of retaliation. Dkt. No. 34-4 at 16-17 (emphasis in original).

Assuming a reasonable jury finds that Plaintiff has met the prima facie case, Defendant has articulated a legitimate non-retaliatory reason for adding the notes. Defendant asserts that Kean added the August 3rd note because she was made aware of problems that were uncovered with Plaintiff's performance after she was let go and wanted to document them in case the budget ever increased and Plaintiff was being considered for a future position. As for the October 19th note, Kean asserts that she added the note for the same reason after a managers' meeting that happened to be

on the same day that Pair emailed Kean requesting Plaintiff's personnel file.

Because Defendant could articulate a legitimate non-retaliatory reason for the notes, the Court turns to the final prong of pretext. Under this prong (assuming Plaintiff has shown a prima facie case), the Court finds that Plaintiff has shown evidence such that a reasonable juror could conclude that Defendant's asserted non-retaliatory reasons for the notes were actually pretext for retaliation in response to the filing of the EEOC charge. First, while Defendant is correct that Plaintiff never uses the word "pretext" in her reply, Plaintiff does address the asserted non-retaliatory reason and presents argument as to why that reason does not hold water. Second, both parties agree that Kean suggested to Pair that he could request Plaintiff's personnel file and that Pair had no reason to request the file but for Kean's suggestion. This is significant because a reasonable jury could find Kean's suggestion as evidence of a desire to retaliate against Plaintiff when combined with the fact that Kean added more notes to the file the same day that Pair emailed Kean requesting Plaintiff's file. Defendant argues that this dispute is irrelevant because the second note was too far removed from the EEOC charge to create an inference of retaliation. For the same reasons as discussed above, the Court rejects this argument. Third, the length of the notes added after Plaintiff was laid off

AO 72A
(Rev. 8/82)

and the negative and disparaging language could lead a reasonable jury to find that this language was specifically added to harm Plaintiff's future employment. Finally, the timing of the notes being added could also lead a reasonable jury to decide that the reason given by the Defendant was pretext. Adding one note about two weeks after getting notice of the EEOC charge and the day after Defendant's counsel encouraged Plaintiff to drop the charge and a second note the same day that Pair requested Plaintiff's personnel file is at minimum suspicious timing, and a juror could find that suspicious timing combined with the other facts of this case as evidence that Defendant's proffered reason for the notes was pretext for retaliation.

For these reasons, Defendant's Motion with respect to Plaintiff's ADEA claim for retaliation is **DENIED**.

## CONCLUSION

Defendant's Motion for Summary Judgment with respect to Plaintiff's age discrimination claim under the ADEA is **GRANTED**. Defendant's motion with respect to Plaintiff's retaliation claim under the ADEA is **DENIED**.

**SO ORDERED**, this 18th day of October, 2018.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA